UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RONALD DOZIER,

                        Petitioner,

   -v-

WILLIAM T. PHILLIPS, SUPERINTENDENT,
Green Haven Correctional Facility,

                        Respondent.

No. 03 Civ. 3298 (RJS) (HBP)

MEMORANDUM AND ORDER

RICHARD J. SULLIVAN, District Judge:

     Ronald Dozier petitions this Court for a writ of habeas corpus, challenging his state-court conviction for one count of burglary in the second degree. In this action, Petitioner argues that he received constitutionally ineffective assistance from both his trial counsel and appellate counsel. For the reasons set forth below, the Court concludes that an evidentiary hearing should be held to determine whether there is a reasonable probability that, but for trial counsel's deficient performance, Petitioner would have been offered and would have accepted a plea deal more favorable than the sentence he ultimately received.

I. BACKGROUND[1]

     This case was initially assigned to the Honorable Loretta A. Preska, District Judge, and it was referred to the Honorable Henry B. Pitman, Magistrate Judge, on June 17, 2003. (Doc. No. 3.) On November 20, 2004, the case was reassigned to the Honorable Kenneth M. Karas, District Judge. (Doc. No. 13.) Judge Pitman issued a Report and Recommendation (the "R&R") regarding the disposition of the petition on November 9, 2006, in which he recommended that Petitioner's application be denied. (Doc. No. 15.) On November 28, 2006, Petitioner filed

---

[1] In the discussion that follows, the Court presumes the parties' familiarity with the underlying facts, as set forth in Judge Pitman's Report and Recommendation.

objections to Judge Pitman's R&R. (Doc. No. 18.) This case was reassigned from Judge Karas to the undersigned on September 4, 2007 (Doc. No. 21), when Judge Karas moved to the White Plains courthouse and the undersigned assumed the bulk of Judge Karas's Manhattan docket.

### A. The Underlying Conviction

Petitioner was arrested in connection with a March 12, 1996 unauthorized entry into a Manhattan apartment. He was charged with second-degree burglary, which is a Class C felony under New York law. *See* N.Y. Penal Law § 140.25. During pre-trial plea negotiations, Petitioner's trial counsel was under the mistaken belief, which was shared by the prosecutor, that Petitioner's criminal history qualified him as a "second violent felony offender" under N.Y. Penal Law § 70.04. In fact, Petitioner's criminal history was more extensive than either attorney realized and qualified him as a "persistent violent felony offender" under N.Y. Penal Law § 70.08.[2] Under this misapprehension, both parties believed that a conviction for the Class C felony with which Petitioner was charged would carry a determinate sentence of between seven and fifteen years. *See* N.Y. Penal Law § 70.04(3)(b). Against this backdrop, the prosecutor offered Petitioner the opportunity to plead guilty to a Class D felony, which (for a "second violent felony offender") carries a sentence of five to seven years, *see id.* § 70.04(3)(c), with the prosecutor specifically offering a five-year sentence. Petitioner rejected this plea offer and proceeded to trial, which began on March 19, 1997. Petitioner absconded during jury deliberations and was convicted *in absentia* of second-degree burglary.

---

[2] For sentencing purposes, New York Penal Law defines a "second violent felony offender" as a person convicted of a "violent felony offense," as defined by N.Y. Penal Law § 70.02(1), "after having previously been subjected to a predicate violent felony conviction." N.Y. Penal Law § 70.04(1)(a). A "persistent violent felony offender" is a person convicted of a "violent felony offense . . . after having previously been subjected to *two or more* predicate violent felony convictions." *Id.* § 70.08(1)(a) (emphasis added).

At sentencing, also conducted with Petitioner *in absentia*, the state trial court determined that Petitioner was a "persistent violent felony offender," not a "second violent felony offender," as counsel for both parties had believed. Petitioner's counsel stated his surprise on the record:

> Nobody realized he was a mandatory persistent. I should have realized it. I did not, and I therefore did not advise my client that he was facing a minimum of sixteen to life on this plea. I advised him all along that the offer was five years, which is the offer that was conveyed to me by [the prosecutor], and that it would be a minimum of seven years if he was convicted after trial with a maximum of fifteen years, determinative [sic] sentence.
> . . . .
> I was his attorney, and I must admit it was negligent of me not to advise him how much time he was facing. Again, I have no excuse for that.

As a result of Petitioner's true criminal-history status, the court was required to "impose an indeterminate sentence of imprisonment, the maximum term of which shall be life imprisonment." *See id.* § 70.08(2). The court was further required to impose a fixed minimum period of imprisonment, which Petitioner would have to serve before being eligible for parole. For a Class C felony, that "minimum period must be at least sixteen years and must not exceed twenty-five years." *See id.* § 70.08(3)(b).[3] The court set the minimum period at eighteen years. On November 4, 1998, Petitioner was detained pursuant to an arrest warrant, and began serving his sentence on November 16, 1998.

### B. Relevant Post-Conviction Relief

Petitioner pursued post-conviction relief though a number of procedural mechanisms. Relevant here is his March 1, 2001 *pro se* motion to vacate his conviction pursuant to N.Y.

---

[3] For a Class D felony, "the minimum period must be at least twelve years and must not exceed twenty-five years." *See* N.Y. Penal Law § 70.08(3)(c).

3

Crim. Pro. Law § 440.10 (the "§ 440.10 motion").[4] In the § 440.10 motion, Petitioner argued that he received constitutionally ineffective representation from his trial counsel based on the same arguments that he raises in his petition before this court. The motion was denied on April 10, 2001. The state court reasoned that Petitioner had waived any challenge to his trial counsel's effectiveness by not raising the arguments during the direct appeal of his conviction. The court also concluded that, even ignoring the state-law procedural defect, Petitioner's federal constitutional rights had not been not violated under *Strickland v. Washington*, 466 U.S. 668 (1984). In this regard, the court reasoned that the five-year plea offer that Petitioner rejected was "without legal significance," since Petitioner "could not have accepted" it in light of his "true status as a persistent violent felony offender, a status which cannot be waived by the People." The court went on to say that because Petitioner had "no right to plead guilty to a lesser offense . . . , he could not have compelled the People to offer him a plea bargain." As a result, the court concluded that Petitioner had "not set forth his entitlement to a sentence lesser than that imposed," and therefore had "failed to show either that counsel failed to provide him with meaningful representation or that he was prejudiced by counsel's erroneous advice." His § 440.10 motion was therefore denied, and the Appellate Division, First Department, denied permission to appeal.

---

[4] On October 22, 2001, Petitioner also sought a writ of error *coram nobis*, in which he argued that he had received ineffective assistance from his appellate counsel. Specifically, Petitioner argued that his appellate counsel was constitutionally deficient because he failed to argue on direct appeal that Petitioner's trial counsel had been ineffective. On July 11, 2002, the Appellate Division, First Department, summarily denied the application. *See People v. Dozier*, 746 N.Y.S.2d 621 (N.Y. App. Div. 2002) (table). Dozier's habeas petition raises this ground for relief as well. Because the Court will hold an evidentiary hearing to determine whether there is a reasonable probability that the outcome would have been different but for trial counsel's errors, it reserves judgment on Petitioner's claim of ineffective assistance of appellate counsel.

C.  Dozier's Habeas Petition

In his habeas petition, Dozier contends that his "trial counsel failed to recognize [his] mandatory violent persistent felony offender status, and as a result, grossly underestimated [his] maximum sentencing exposure."  (App. to Pet'n at 3-4.)  In his February 18, 2004 "Traverse" (i.e., his response to the government's answer), Petitioner contends that he was prejudiced by his trial counsel's deficient representation because it is "highly likely" that the prosecutor would have allowed him "to plead guilty to a [Class] D felony and offered [him] a sentence of 12 years to life," and that "there is ample evidence to support the conclusion that [he] would have accepted" that offer. (Doc. No. 12 at 10-11.)

1. The Report and Recommendation

The petition was referred to Magistrate Judge Pitman, who recommended that the petition be denied.  In a thoughtful and thorough Report and Recommendation, Judge Pitman concluded that the Antiterrorism and Effective Death Penalty Act (AEDPA) required the Court to defer to the state court's resolution of the case.  He also found that, even assuming *arguendo* that trial counsel was constitutionally deficient, Petitioner could not demonstrate prejudice.  In relevant part, Judge Pitman reasoned that Petitioner's contention that he would have received and accepted a more favorable plea deal was a "hypothetical" that Petitioner had "conjured . . . out of thin air," and that his evidence in support of this contention was insufficient as a matter of law.  (R&R at 22-27.)  Specifically, Judge Pitman concluded that "[s]ince [P]etitioner has not shown that trial counsel's error deprived him a favorable plea offer that he probably would have accepted, [P]etitioner has not show[n] that he was prejudiced by trial counsel's error, and he has failed to establish the second element of the *Strickland* test."  (R&R at 27.)

2. Petitioner's Objections

Petitioner lodged three principal objections to Judge Pitman's recommendations: one related to the appropriate standard of review, and two related to his showing of prejudice. (Doc. No. 18). First, Petitioner argues that Judge Pitman should have applied "pre-AEDPA jurisprudence" in analyzing his claims. (*Id.* at 5.) Second, Petitioner contends that Judge Pitman overlooked "clear evidence" demonstrating that, if the prosecutor had been aware of Petitioner's "persistent violent felony offender" status, he "would have been willing to offer the lowest allowable [plea] offer, which was 12 years to life." (*Id.* at 8.) Finally, and relatedly, Petitioner contends that Judge Pitman overlooked "ample evidence" establishing a reasonable probability that Petitioner would have accepted such a plea deal had it been offered.

II. DISCUSSION

A. Standard of Review

This Court may accept, reject, or modify, in whole or in part, the findings and recommendations of a magistrate judge. *See, e.g.*, *Silva v. Peninsula Hotel*, 509 F. Supp. 2d 364, 365-66 (S.D.N.Y. 2007); *DeLuca v. Lord*, 858 F. Supp. 1330, 1345 (S.D.N.Y. 1994). As to those portions of a Report and Recommendation to which no "specific, written objection" is made, the Court may accept the findings contained therein, as long as the factual and legal bases supporting the findings are not clearly erroneous. *See* Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Greene v. WCI Holdings Corp.*, 956 F. Supp. 509, 513 (S.D.N.Y. 1997). But with respect to portions of a report to which specific written objections are timely made, the Court reviews a magistrate judge's findings and recommendations *de novo*. *See* Fed. R. Habeas Corpus 8(b); *Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998); *United States v. Male*

*Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). As a result of Petitioner's objections to the Report and Recommendation, the Court reviews his arguments *de novo*.

### B. AEDPA's Applicability

Under AEDPA, a federal court must reject a state prisoner's habeas petition

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

As noted, the state court held that Petitioner's claim was procedurally defaulted and, in the alternative, that it failed on the merits. While the procedural-default holding would normally suffice to dispose of Dozier's petition, the State has waived this argument by failing to raise it as an affirmative defense. *See Trest v. Cain*, 522 U.S. 87, 89 (1997) ("[P]rocedural default is normally a 'defense' that the State is 'obligated to raise' and 'preserv[e]' if it is not to 'lose the right to assert the defense thereafter.'" (quoting *Gray v. Netherland*, 518 U.S. 152, 166 (1996))); *Smith v. McGinnis*, No. 01 Civ. 1363 (WHP), 2008 WL 5203726, at *4 (S.D.N.Y. Dec. 11, 2008) ("A procedural default is an affirmative defense that is waived if not raised."). The question therefore becomes whether AEDPA nonetheless applies, in light of the State's procedural-default waiver.

Petitioner argues that his ineffective-assistance claim should be governed by "pre-AEDPA jurisprudence," rather than the deferential standard set out in § 2254(d). Pre-AEDPA standards apply only when both of two conditions are met: (1) the State has waived its

procedural-default argument, and (2) AEDPA deference is inapplicable because the state adjudication under consideration was not on the merits. *See Jimenez v. Walker*, 458 F.3d 130, 145 n.17 (2d Cir. 2006). In all other cases, a federal court conducting habeas review is presented with a "binary" decision to "either apply AEDPA deference to review a state court's disposition of a federal claim or refuse to review the claim because of a procedural bar properly raised." *Id.* at 145. Here, Petitioner's claim was adjudicated on the merits in state court, albeit as an alternative holding, and AEDPA deference therefore applies. *See Mask v. McGinnis*, 233 F.3d 132, 137, 139 (2d Cir. 2000) (applying AEDPA deference where the State's procedural-default argument was waived but the state-court adjudication had addressed the merits of the case in the alternative).

### C. Was the State Court Decision Contrary to Clearly Established Federal Law?

A constitutional claim based on the ineffective assistance of counsel is governed by the familiar two-prong test of *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a claimant to show that "(1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lynn v. Bliden*, 443 F.3d 238, 247 (2d Cir. 2006). Adapting the general language of the second prong to the specific factual context of this case, Petitioner must show that, had counsel's performance not been deficient, (1) the prosecutor would have offered a plea deal that was more favorable than the sentence Petitioner actually received, and (2) Petitioner would have accepted such an offer. *See Aeid v. Bennett*, 296 F.3d 58, 63 (2d Cir. 2002); *Mask*, 233 F.3d at 141-42.

To make this showing, Petitioner must establish a "reasonable probability" that both offer and acceptance would have occurred. *See Strickland*, 466 U.S. at 688-90. "The reasonable-probability standard is not the same as, and should not be confused with," the higher standard of preponderance of the evidence. *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). Rather, it is "a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 694; *see also Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) ("The level of prejudice the defendant need demonstrate lies between prejudice that 'had some conceivable effect' and prejudice that 'more likely than not altered the outcome in the case.'"). As the Supreme Court has explained, to hold a petitioner to a higher evidentiary standard than "reasonable probability" would be "contrary to . . . clearly established Federal law" within the meaning of AEDPA:

> If a state court were to reject a prisoner's claim of ineffective assistance of counsel on the grounds that the prisoner had not established by a preponderance of the evidence that the result of his criminal proceeding would have been different, that decision would be "diametrically different," "opposite in character or nature," and "mutually opposed" to our clearly established precedent because we held in *Strickland* that the prisoner need only demonstrate a "reasonable probability that . . . the result of the proceeding would have been different."

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000) (quoting *Strickland*, 466 U.S. at 694).

The state court committed precisely this error. It first noted, correctly, that the five-year sentence that Petitioner was offered could not legally have been accepted. It recognized that the appropriate question is not whether Petitioner would have accepted the five-year plea deal if he had known his true sentencing exposure, but whether he would have been offered and would have accepted a plea deal that was more favorable than the sentence he actually received. The court went on to say, however, that "as [Petitioner] has no right to plead guilty to a lesser offense

9

. . . , he could not have compelled the People to offer him a plea bargain." It further emphasized that Petitioner's claim failed because he had "not set forth his *entitlement* to a sentence lesser than that imposed" (emphasis added). The proper inquiry, though, is not whether Petitioner can establish his "entitlement" to a lesser sentence — for example, by showing a legal basis for *compelling* a plea offer — but whether he can establish that the offer and acceptance of a plea deal would have been reasonably probable. This was not an inquiry that the state court made. Indeed, its opinion bears some similarities to the state-court opinion under review in *Mask*, in which the state court said that because Mask's contentions were mere "speculation," he had "not shown that but for [counsel's error], . . . he would have been offered and would have accepted a more advantageous bargain." *Mask*, 233 F.3d at 140. The Second Circuit observed that "[n]owhere in the state court decision does the court refer to the correct standard for assessing ineffectiveness claims — that petitioner is required to demonstrate only '*reasonable probability*.'" *Id.* The Second Circuit concluded that the state court's apparent "insistence on certainty . . . represents an 'unreasonable application of [] clearly established Federal law." *Id.* For the same reasons, the Court concludes that the state court's assessment of Petitioner's ineffective-assistance claims applied an evidentiary standard that is clearly contrary to Federal law. As such, the Court's review of the merits of Petitioner's claims "is unencumbered by the deference AEDPA normally requires." *See Panetti v. Quarterman*, 551 U.S. 930, 948 (U.S. 2007).

D.  Ineffective Assistance of Trial Counsel

The first prong of the *Strickland* test — gravely deficient performance by counsel — has never been seriously contested by the State.[5]  Petitioner's trial counsel admitted that his failure to learn Petitioner's true criminal history was "negligent" and that he "ha[d] no excuse for" it. Because a reasonable attorney acting "under prevailing professional norms," *see Lynn*, 443 F.3d at 247, would have ascertained Petitioner's true criminal-history status under these circumstances, the Court concludes that Petitioner's trial counsel's actions fell below the standard required by the Constitution.  *See Mask v. McGinnis*, 28 F. Supp. 2d 122, 125 (S.D.N.Y. 1998) ("[D]efense counsel's representation fell below the prevailing norm by virtue of his failure to recognize defendant's status as a second violent felony offender rather than a persistent violent felony offender."), *aff'd*, 233 F.3d 132 (2d Cir. 2000); *see also United States v. Gordon*, 156 F.3d 376, 380 (2d Cir. 1998) ("By grossly underestimating [petitioner's] sentencing exposure in a letter to his client, [petitioner's counsel] breached his duty as a defense lawyer in a criminal case to advise his client fully on whether a particular plea to a charge appears desirable." (quotations omitted)).  The question then becomes whether Petitioner was prejudiced by trial counsel's deficiency — specifically, whether Petitioner has established a reasonable probability that he would have been offered and would have accepted a plea deal more favorable than the sentence he received.

1. Would a Plea Deal Have Been Offered?

Petitioner first contends that there is "clear evidence" that, had his true criminal-history category been known, the prosecutor would have offered him the opportunity to plead guilty to a

---

[5]  As noted, Judge Pitman assumed *arguendo* that Petitioner had satisfied *Strickland*'s first prong.

Class D felony and receive the lowest sentence legally allowable under the circumstances.  In other words, he asserts that the prosecutor would have offered him a plea deal precisely analogous to the one he was actually offered, with the only difference being that the offer would have reflected his true criminal-history status.  A "persistent violent felony offender" convicted of a Class D felony must receive "an indeterminate sentence of imprisonment, the maximum term of which shall be life," *see* N.Y. Penal Law § 70.08(2), with a fixed minimum term of between twelve and twenty-five years.  Thus, Petitioner contends that he would have been offered the opportunity to plead guilty to a Class D felony and receive an indeterminate sentence of twelve years to life.

A contention of this type is, of course, inherently speculative.  It is possible that, had the prosecutor realized that Petitioner was a "persistent violent felony offender," he would not have offered him a plea deal at all, or would have offered him a deal relatively less favorable than the deal he actually offered.  But Petitioner does not have to establish that an offer would have been certain, or even more likely than not.  He need only establish a reasonable probability.  Here, the prosecutor offered Petitioner the most favorable deal legally allowable under the (misperceived) circumstances.[6]  Under the circumstances, it seems likely, or at least reasonably probable, that he would have done the same had there been no mistake about Petitioner's true criminal-history status.  *See Mask*, 233 F.3d at 138.  The Court is thus inclined to conclude that Petitioner has established a reasonable probability of receiving a plea offer of twelve years to life.  Although

---

[6] Judge Pitman concluded that the five-year offer was actually two years higher than the most favorable deal that the prosecutor could have offered.  To support this conclusion, he cited N.Y. Penal Law § 70.06(6)(c), which permits a sentence as low as three years for a Class D felony conviction.  But this provision covers "second felony offenders," not "second *violent* felony offenders," which is the category into which the parties believed that Petitioner fell.  Sentencing for "second violent felony offenders" is covered by § 70.04, which states that the lowest possible sentence for a Class D felony conviction is five years — which is what the prosecutor offered.

the State has never suggested otherwise (other than to note that Petitioner's contention was purely speculative), it will have the opportunity, if it so chooses, to offer evidence to rebut this tentative conclusion at the evidentiary hearing.

### 2. Would Dozier Have Accepted the Offer?

When Petitioner thought that he was facing a determinate sentence of between seven and fifteen years, he rejected a plea offer of five years. His challenge in this petition is to establish a reasonable probability that, if he had known he was facing an indeterminate life sentence with a minimum term of between sixteen and twenty-five years, he would have accepted an offer of an indeterminate life sentence with a minimum term of twelve years. In determining whether Petitioner has made this requisite showing, "the fact-finder will primarily have to make a determination of [Petitioner's] credibility." *Cullen v. United States*, 194 F.3d 401, 407 (2d Cir. 1999). And while Petitioner's assertion that he would have accepted such a plea if offered is "self-serving (like most testimony by witnesses who are parties), it ought not be rejected solely on this account." *Id.* Rather, "[t]he credibility determination should be based on all relevant circumstances." *Id.* at 408. Although Judge Pitman relied on language in *Gordon* to conclude that "some 'objective evidence,' beyond the petitioner's self-serving, post-conviction testimony" is necessary to establish a reasonable probability, *see* R&R at 23 (citing *Gordon*, 156 F.3d at 380-81), the Second Circuit has since said that "the better reading of *Gordon* is a simple recognition that in most circumstances a convicted felon's self-serving testimony is not credible. This does not relieve habeas courts of their responsibility to actually make a credibility finding in each case, even absent objective evidence." *Purdy v. Zeldes*, 337 F.3d 253, 259 (2d Cir. 2003).

Courts have recognized that a key factor in determining the credibility of a petitioner's claims under these circumstances is the disparity between the plea deal that he would have been offered and the sentence that he in fact faced if convicted. *See Mask*, 233 F.3d at 141-42; *Cullen*, 194 F.3d at 407-08; *Gordon*, 156 F.3d at 381. It is also instructive to compare this disparity to the one that existed between the plea that Petitioner actually rejected and the sentence that he mistakenly thought he faced. Here, if Petitioner had been offered an indeterminate sentence with a minimum term of twelve years, this would have been at least four years shorter and at most thirteen years shorter than the minimum term that he would have faced if convicted of a Class C felony. By comparison, the five-year sentence he was actually offered was at least two years shorter and at most ten years shorter than the sentence that he thought he would have faced if convicted. The larger discrepancy in the posited plea situation lends some credence to the assertion that Petitioner would have accepted the hypothetical plea deal despite rejecting the deal that he was actually offered. Bolstering this claim is Petitioner's statement that he (1) explicitly instructed his attorney to pursue further plea negotiations and (2) indicated to him that he would accept an offer of a three-year sentence. A three-year sentence would have been four years shorter than the minimum sentence he thought he was facing if convicted of a Class C felony — the same difference that would have existed in the hypothetical plea deal under consideration (a twelve-year minimum term, as compared to a minimum term of at least sixteen years).

On the other hand, the fact that both a Class C felony and a Class D felony require an indeterminate sentence of up to life imprisonment suggests that the minimum term of imprisonment might not have been the most salient detail: if Petitioner had known that his term

of imprisonment would ultimately be determined by the parole board, he might not have placed much weight on when the parole board could first consider his eligibility for release. A further consideration undermining Petitioner's credibility is the fact that he absconded during trial. This might suggest that his plan all along was to take his chances at trial and hope that the prosecution was unable to make its case; if it appeared that conviction was likely, he would flee. If this was in fact Petitioner's mindset, then it is extremely unlikely that he would have accepted the hypothetical plea deal under consideration.

Rather than making a final credibility determination on the basis of these equivocal facts alone, the Court concludes that it would be appropriate to hold a hearing to allow the parties to present the relevant facts more fully. *See* Fed. R. Habeas Corpus 8(a) ("If the petition is not dismissed, the judge must review the answer, any transcripts and records of state-court proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted."); *Carrion v. Smith*, No. 04 Civ. 1034 (SAS), 2009 WL 2474059, at *4 (S.D.N.Y. Aug. 12, 2009) (noting that the court had conducted evidentiary hearings on credibility, after being instructed to do so on remand by the Second Circuit); *cf. Kimmelman v. Morrison*, 477 U.S. 365, 390-91 (1986) (affirming the Circuit Court's decision to remand the ineffective-assistance claim for an evidentiary hearing, on the grounds that "[w]hile the existing record proved adequate for our application of *Strickland*'s competency standard, it is incomplete with respect to prejudice"). It is not that Petitioner has "failed to develop the factual basis of [his] claim in State court proceedings," within the meaning of 28 U.S.C. § 2254(e)(2). Rather, the determinative factor in the case — the credibility of Petitioner's assertion that he would have been offered and would have accepted a shorter sentence than the one he ultimately received —

15

is supported by some evidence in the record and undercut by other evidence. An evidentiary hearing would help the Court assess Petitioner's credibility and thereby determine whether a reasonable probability of a different outcome exists. The Court contemplates hearing testimony from Dozier, his trial counsel, and the prosecutor who engaged in the plea discussions. After the hearing, the Court will determine whether Petitioner has established a reasonable probability that, but for trial counsel's ineffectiveness, he would have been offered and would have accepted a plea deal of twelve years to life. If the Court concludes that Petitioner has made this showing, it will issue a conditional writ of habeas corpus that requires the State to either reduce Petitioner's sentence to twelve years to life or grant him a new trial. *See Mask*, 233 F.3d at 138 & n.4. If, on the other hand, the Court concludes that Petitioner has failed to make this showing, it will then consider the merits of his claim of ineffective assistance of appellate counsel.

### III. CONCLUSION

For the foregoing reasons, and after careful deliberation, the Court respectfully declines to adopt the Report and Recommendations. An order or orders scheduling an evidentiary hearing and/or addressing the propriety of appointing counsel for Petitioner pursuant to Federal Rule of Habeas Corpus 8(c) will issue separately.

SO ORDERED.

Dated:   September 21, 2009
         New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

Copies of this Order have been mailed to:

Ronald Dozier
98-A-7078
Clinton Correctional Facility
P.O. Box 2001
Dannemora, NY 12929

Ashlyn Hope Dannelly
New York State Office of the Attorney General
120 Broadway
New York, New York 10271